IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 APR 24  P 3: 30
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, ) ) ) ) Plaintiff, ) ) v. ) ) ELMER MYERS ARMSTRONG, an individual, and FREIDA ARMSTRONG, an individual, ) ) ) ) ) Defendants. ) | CIVIL ACTION NO.: 2:06cv372-vpm |

## BRIEF IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

UNITED STATES FIDELITY AND GUARANTY COMPANY ("USF&G"), has commenced this action to seek enforcement of its rights to reimbursement, exoneration and indemnification as provided under settled principles of common law and pursuant to the clear and unambiguous terms of a Master Surety Agreement and a General Contract of Indemnity. USF&G has requested entry of a preliminary injunction so that the nature and extent of any and all assets available to defendants Elmer Myers Armstrong and Freida Armstrong can be determined, and provisions made for their preservation and eventual application to all performance and payment bond losses incurred and anticipated by USF&G.

1

{B0588525}

## I. MATERIAL FACTS

1. At the request of Price Oil, Inc. ("Price Oil"), USF&G issued a series of bonds on behalf of various State, local and other governmental and private entities to secure the payment of Federal and State excise taxes. These bonds include the following:

| BOND NO. | PENAL LIMIT | OBLIGEE |
| --- | --- | --- |
| KU5748 | $235,000.00 | Exxon Company, USA |
| KU9597 | $1,000.00 | State of Georgia, Department of Revenue |
| KU9787 | $100,000.00 | State of Florida, Department of Revenue |
| KU9788 | $100,000.00 | State of Florida, Department of Revenue |
| KU9789 | $4,000.00 | Jefferson County, Alabama |
| KV0494 | $51,000.00 | State of Tennessee, Department of Revenue |
| KV0532 | $112,284.00 | State of Florida, Department of Revenue |
| KV0726 | $216,000.00 | State of Alabama, Department of Revenue |
| KV0727 | $5,000.00 | State of Alabama, Petroleum Commodities Division |
| KV0730 | $10,000.00 | Houston County, Alabama |
| TD5729 | $25,000.00 | State of Mississippi, Petroleum Tax Division |

2. Price Oil filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Middle District of Alabama, Case No. 05-34286, on December 22, 2005. USF&G subsequently received notices of claims against the

aforementioned bonds. USF&G is investigating the remaining claims and believes that one or more of the claims may be meritorious. USF&G intends to discharge any obligations that it may owe to the claimants in accordance with the requirements of its bonds and applicable law.

3. Based upon its investigation, USF&G has established loss reserves in the amount of $ 865,000.00.

4. Prior to the issuance of the aforesaid bonds, defendants, separately and severally, each executed a Master Surety Agreement and a General Contract of Indemnity (hereinafter collectively referred to as "Indemnity Agreements") in favor of USF&G's parent company, St. Paul Fire and Marine Insurance Company, in which defendants have promised to exonerate, defend and hold USF&G harmless from any loss, cost or expense which might result from the issuance of any of the aforesaid bonds. A true and correct copies of the Master Surety Agreement, dated June 19, 1996, and the General Contract of Indemnity, dated October 12, 2005, are attached hereto as Exhibit "A" and Exhibit "B."

5. Pursuant to the express terms of the Indemnity Agreements, the defendants, separately and severally, also agreed to collateralize any reserve established by USF&G in anticipation of any loss under any bonds issued on Price Oil's behalf. Specifically, defendants agreed as follows:

> In order to exonerate, hold harmless, and indemnify SURETY, UNDERSIGNED shall upon demand of SURETY, place SURETY in funds before SURETY makes any payment; such funds shall be, at SURETY'S option, money or property, or liens or security interests in property.

Master Surety Agreement, ¶III(B), attached as Exhibit "A."

> To deposit with Company, on demand, the amount of any reserve against such Loss which Company is required, or deems it prudent to establish whether on account of an actual liability or one which is, or may be, asserted against it and whether or not any payment for such Loss has been made.

General Contract of Indemnity, ¶2(b), attached as Exhibit "B."

6. On information and belief, the defendants have recently sold their primary residence or are in the process of selling the same. In addition, Price Oil is in the process of liquidating and selling a significant portion of its assets in the bankruptcy proceedings.

7. In accordance with the provisions of the Indemnity Agreements, USF&G has requested that defendants deposit collateral, money, or other security in the amount of its current loss payments and reserves pending final disposition of all claims. The defendants have failed to honor this request for collateralization, and have otherwise refused to perform their obligations as specified in the Indemnity Agreements.

8. Based upon its investigation to date, and in light of the facts and circumstances as set forth herein, USF&G justifiably fears that the assets of defendants may be insufficient to provide for the reimbursement, exoneration and indemnification of USF&G, as surety. In equity and good conscience, the assets of defendants should be made available for the performance of their obligations set forth in the Indemnity Agreements.

9. Accordingly, pursuant to the general principles of suretyship and the clear and unambiguous terms of the Indemnity Agreements, USF&G is entitled to immediate injunctive relief pending the performance of all obligations of defendants Elmer Myers Armstrong and Frieda Armstrong.

## II. APPLICABLE LAW

### A. The Indemnity Agreements Provide for the Specific Relief that USF&G Has Requested.

In order to preserve USF&G's rights under principles of exoneration and *quia timet*, and its rights to specific performance of the Indemnity Agreements, USF&G seeks preliminary injunctive relief to prevent the dissipation of assets and to require an accounting of financial affairs of the defendants.

Pursuant to the express terms of the Indemnity Agreements, defendants are, separately and severally, required to indemnify and save USF&G harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense, including attorneys fees, incurred by virtue of the issuance of the bonds and to collateralize USF&G in anticipation of any loss under the bonds as soon as liability exists or is asserted. Specifically, said defendants agreed as follows:

> UNDERSIGNED shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all demands, claims, liabilities, losses and expenses of whatever kind or nature (including but not limited, interest, court costs and counsel fees) imposed upon, sustained or incurred by SURETY by reason of: (1) SURETY having executed, provided or procured BONDS(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any provision of this AGREEMENT;

*See* Master Surety Agreement, ¶III(A), attached as Exhibit "A."

> To indemnify and exonerate Company from and against any and all losses, cost and expense of whatever kind, including unpaid premiums, interest, court costs and counsel fees, as well as any expense incurred or sustained by reason of making any investigation which it may incur or sustain as a result of or in connection with the furnishing of Bond(s), the assumption of obligations of Company of Bond(s), and/or the enforcement of this Agreement, hereinafter referred to as "Loss.".

5

{B0588525}

*See*, General Contract of Indemnity, ¶2, attached as Exhibit "B." It is undisputed that, based upon its investigation, USF&G has established loss reserves in the amount of $ 865,000.00 and demanded that defendants deposit collateral, money, or other security in the said amount pending final disposition of all claims. It is likewise undisputed that defendants have failed and refused to honor this demand. Given these facts, defendants are in clear breach of their obligations under the Indemnity Agreements and there is no justifiable basis for them to avoid their contractual obligations and immediately post collateral with USF&G. Until the funds are deposited with USF&G as collateral, defendants should be prevented from transferring or disposing of assets that can be used to offset USF&G's anticipated losses and satisfy all pending bond claims.

This Court, and the vast majority of other courts, have enforced indemnity agreements such as the one signed by defendants in accordance with their terms. *See Frontier v. International, Inc.*, 124 F.Supp.2d 1211, 1213 (N.D. Ala. 2000); *United States Fidelity & Guaranty Co. v. Feibus*, 15 F.Supp.2d 579 (M.D. Pa. 1998). The defendants obligations to immediately deposit funds with USF&G is not contingent upon Price Oil's or USF&G's actual liability for the pending bond claims. *See Frontier*, 124 F.Supp.2d at 1215. Rather, under collateral security provisions such as the one at issue, "once a surety receives a demand on its bond, the principal must provide the surety with funds which the surety is to hold in reserve." *Feibus*, 15 F.Supp.2d at 588. As noted by another court, "[i]f a creditor is to have the security position for which he bargained, the promise to

maintain the security must be specifically enforced." *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984).

      B.    <u>USF&G is Entitled to the Requested Relief Pursuant to this Court's Equitable Powers to Enforce a Surety's Rights of Exoneration and *Quia Timet*</u>.

Historically, *quia timet* was a procedural device by which courts of equity would exercise their jurisdiction to prevent an anticipated injury. The term "*quia timet*" is a Latin phrase which means "because he fears or apprehends." *Black's Law Dictionary* at 1247 (6th ed. 1990). In equity practice, rights of *quia timet* allow a party to seek the aid of a court because the party fears some future probable injury to its rights or interest. *Id.* Although courts have utilized *quia timet* to prevent a variety of anticipated losses, the doctrine of *quia timet* is especially suited to situations involving sureties. One of the more often cited modern cases invoking *quia timet* relief is *Milwaukee Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966), where the Court held:

> Not only does a bill *quia timet* lie to compel the principal to pay the debt after it has become due, but its use has also been extended to compel the principal to furnish the surety indemnity against possible loss where the surety has reasonable grounds for anticipating that his rights are being jeopardized and that he will incur a liability by threatened conduct of the principal.

*Milwaukee Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d at 966. Defendants refusal to honor the collateral security provision of the Indemnity Agreements establishes more than reasonable grounds for USF&G to fear that defendants will be unable or unwilling to satisfy the pending bond claims.

7

{B0588525}

Sureties such as USF&G also have equitable rights of exoneration that provide for the relief that USF&G has requested. Exoneration is the surety's right, after the principal's debt has matured, to compel the principal to honor its contractual obligations. *See* Restatement of the Law (Third) of Suretyship and Guaranty § 21 (1995). *See also Filner v. Shapiro*, 633 F.2d 139, 142 (2d Cir. 1980). As noted by the Supreme Court of Alabama in *Doster v. Continental Casualty Co.*, 105 So. 2d 83 (Ala. 1958), "[n]o principal of equity is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying, or being called on to pay it, may file a bill in equity to compel the principal debtor to exonerate him from liability. . . ." *Doster*, 105 So. 2d at 85 (*citing Searcy v. Shows*, 85 So. 444, 445 (1920)). Pursuant to *Doster* and the express terms of the Indemnity Agreements, USF&G is entitled to the immediate deposit of funds from defendants, separately and severally, to protect it from further liability resulting from having issued bonds on behalf of Price Oil.

C.  <u>USF&G Has Established Its Burden to Obtain Preliminary Injunctive Relief</u>.

Pursuant to the holding and rationale of *Doster*, USF&G is not required to satisfy the elements traditionally required to obtain injunctive relief. In *Doster*, the Supreme Court recognized that a principal has the primary duty to satisfy claims against a bond and that the surety has a right to be exonerated without being burdened with liability and the risk of ultimate loss. *Doster*, 105 So. 2d at 86. USF&G is entitled to the immediate enforcement of the terms of the Indemnity Agreements and is not required to show that defendants are insolvent or that they are presently attempting to dispose of their assets. *Doster*, 105 So. 2d at 86 (holding that " . . . . in order to maintain such bill it is not

necessary for the surety to show any fraudulent disposition of property on the part of the principal or any special reason for fearing loss.").

Even applying the traditional elements for the entry of a preliminary injunction, USF&G is entitled to the relief it has requested. Those traditional elements are: (1) a substantial likelihood on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public policy. *United States v. Jefferson County, Alabama*, 720 F.2d 1511, *reh'g denied*, 724 F.2d 978 (11th Cir. 1983).

(1)   *Likelihood of Success on the Merits*

Pursuant to statutory law and the express terms of the Indemnity Agreements, USF&G is entitled to reimbursement from defendants, separately and severally, for all losses and expenses it incurs as a result of having issued bonds on behalf of Price Oil. *See Ala. Code* §8-3-5 (1975); *see also Frontier*, 124 F.Supp.2d at 1213. The defendants do not dispute having signed the Indemnity Agreements and have not offered any defense to the enforcement of the Indemnity Agreements in accordance with their terms. Accordingly, it is anticipated that USF&G will prevail on the merits.

(2)   *USF&G Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief.*

If the Court denies USF&G's request for preliminary injunctive relief, there will be no adequate remedy at law to substitute for the denial of its contractual rights to collateralization under the Indemnity Agreements or the denial of its equitable rights of

{B0588525}

*quia timet* and exoneration during the pendency of this case. The loss of these rights constitutes irreparable harm. The United States District Court for the Southern District of Texas has held that the denial of injunctive relief to a surety "will forever deny [the surety's] ability to assert and enforce its *quia timet* and exoneration rights under the Indemnity Agreements, at common law, and in equity. Those rights are moot once payment by or on behalf of the surety is made." *Wingsco Energy One v. Vanguard Groups Resources 1984, Inc.*, 1989 WL 223756 * 3 (S.D. Tex. 1989) (memorandum and order). Similarly, the United States District Court for the Northern District of Ohio held that "[u]nless the injunctive relief requested below is granted, [the surety] will not be adequately secured for its obligations and will forever and irreparably lose its rights of *quia timet* and exoneration." *Northwestern Nat'l Ins. Co. of Milwaukee Wisconsin v. Barney*, 1988 WL 215411 * 9 (N.D. Ohio 1988). Accordingly, the denial of USF&G's request for preliminary injunctive relief would render meaningless the provisions of Indemnity Agreements that provide for *quia timet* and exoneration.

Other courts, including the Northern District of Alabama in *United States Fidelity and Guaranty Company v. Slate Security Systems, Inc., et. al*, Civil Action No. CV-04-BE-3500-S, have followed this basic reasoning. Where the only condition of an indemnitor's obligation to post collateral is that the surety establish a reserve and demand current funds in the amount of the reserve, equity mandates enforcement of the indemnitor's obligation because "a legal remedy for subsequent damages would not suffice." *United Bonding Ins. Co. v. Stein*, 273 F.Supp. 929 (E.D. Pa. 1967). Under similar circumstances, the court in *United States Fidelity & Guar. Co. v. J. United*

*Electrical Contracting Corp.*, 62 F.Supp.2d 915 (E.D.N.Y. 1999), held that where the extent of the surety's liability had not yet been determined but claims were expected, "the surety had no legal remedy…but did have an equitable remedy for specific performance of the collateral security provision." *J. United Electrical Contracting Corp.*, 62 F.Supp.2d at 923. The court further held that the breach of an agreement to provide collateral "will result in immediate harm because the Sureties risk being deprived of bargained-for collateral." *J. United Electrical Contracting Corp.*, 62 F.Supp.2d at 923. Accordingly, USF&G has firmly established that it will suffer irreparable injury if the defendants are not enjoined as requested.

(3)   *The Threatened Injury to USF&G Outweighs Potential Damages to Defendants.*

If defendants are permitted to sell or transfer their current assets, USF&G stands to lose the ability to be reimbursed for the losses it has already incurred. Moreover, there will be a greater chance that USF&G will be required to expend its own funds to satisfy any remaining meritorious claims and never be reimbursed. This injury clearly outweighs any conceivable damage or harm arising from the entry of an order requiring defendants to marshall or preserve their assets pending final resolution of this case.

(4)   *Public Policy Considerations*

Public policy considerations mandate the enforcement of valid indemnity agreements such as the one signed by the defendants in this case. Under universally accepted principles of suretyship, a surety, which is only secondarily liable for the debts of its principal, should never incur a loss, particularly an un-reimbursed loss, as a result

of having issued bonds on behalf of its principal. Pursuant to the Indemnity Agreements, the defendants have agreed to reimburse USF&G's losses *and* to place USF&G in funds to protect it against pending claims. If the defendants are permitted to avoid their contractual and equitable obligations and to dissipate assets that could otherwise be used to reimburse the surety for its losses, then the entire premise upon which suretyship is based fails and the collateral security provisions of indemnity agreements are rendered meaningless and unenforceable. It is in the interest of public policy that USF&G's rights should be enforced.

USF&G is not aware of any case or rule of law to suggest that the public policy interests are disserved by the enforcement of a valid indemnity agreement or the enforcement of a surety's rights of *quia timet* and exoneration. Accordingly, USF&G is entitled to the preliminary injunctive relief it has requested.

D. <u>Courts in The Northern District of Alabama Have Adopted These Arguments and Issued a Temporary Restraining Order and Preliminary Injunction Under Similar Facts and Circumstances.</u>

In *United States Fidelity and Guaranty Company v. Slate Security Systems, Inc., et. al*, Civil Action No. CV-04-BE-3500-S, a surety filed suit seeking recovery of anticipated losses under subcontract performance and payment bonds it had issued on behalf of Slate Security Systems, Inc. (Slate Security) on a project located in Broward County, Florida. It was undisputed that the surety had demanded, pursuant to the terms of a similar indemnity agreement, that its principal and individual indemnitors deposit money, security or other collateral in the amount of its loss reserves and that the defendants had failed to honor this demand. It was likewise undisputed that there was no

evidence that the defendants were secreting or attempting to dispose of their assets. Relying on the exact same arguments and principles set forth above, the Honorable Karen Bowdre entered a Temporary Restraining Order and Preliminary Injunction identical to that which has been requested by USF&G in this case. Copies of the Temporary Restraining Order and Preliminary Injunction Order entered in *United States Fidelity and Guaranty Company v. Slate Security Systems, Inc., et. al*, Civil Action No. CV-04-BE-3500-S, are attached hereto as Exhibits "C" and "D", respectively.

### III. CONCLUSION

USF&G seeks enforcement of the longstanding equitable remedies given the surety. These remedies are extended in favor of USF&G and against the indemnitors by virtue of the express terms of the Indemnity Agreements. The issuance of the requested injunction is clearly appropriate under the circumstances inasmuch as it would serve to maintain the status quo and prevent dissipation of assets which might otherwise be available to satisfy the bonded obligations. For the foregoing reasons, USF&G requests, pending performance by the defendants of their collateralization obligations, that the Court enter a preliminary injunction in the manner as set forth in the Complaint.

/s/ Thomas L. Selden
THOMAS L. SELDEN
BRIAN A. DODD
Attorneys for United States Fidelity and
Guaranty Company

OF COUNSEL:

STARNES & ATCHISON, LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama 35259-8512
(205) 868-6000

THIS BRIEF IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION
IS BEING SERVED WITH THE SUMMONS AND COMPLAINT