IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES FIDELITY AND )
GUARANTY COMPANY, )
                        )
    Plaintiff, )
                        )
v. )   CASE NO. 2:06CV372-WHA
                        )
PRICE OIL, INC., ELMER MYERS )
ARMSTRONG, and FREIDA ARMSTRONG, )
                        )
    Defendants. )

---

## AFFIDAVIT OF BRIAN A. DODD

---

Before me the undersigned authority, a Notary Public in and for said County and State, personally appeared BRIAN A. DODD, and after first being duly sworn by me, deposes and says as follows:

1.    My name is Brian A. Dodd. I am a partner of the law firm of Starnes & Atchison LLP, 7th Floor, 100 Brookwood Place, Post Office Box 598512, Birmingham, Alabama 35209. I have been licensed to practice law in Alabama since 1999. I have personal knowledge of the matters stated herein.

2.    Starnes & Atchison, LLP was retained by United States Fidelity and Guaranty Company ("USF&G") with respect to certain Bonds that USF&G had issued on behalf of Price Oil, Inc. ("Price Oil") to secure the payment of Federal and State excise taxes to various State, local and other governmental and private entities.

1

3.      As of July 3, 2007, USF&G has incurred losses and expenses in the administration of the bond claims in the amount of $448,925.33.  Additionally, based upon its investigation, USF&G has established loss reserve in the amount of $421,074.67.

4.      Prior to the issuance of the aforesaid Bonds, Elmer Meyers Armstrong, Freida Armstrong (hereinafter collectively referred to as the "Armstrongs") and Price Oil, separately and severally, each executed a Master Surety Agreement in favor of USF&G and a General Contract of Indemnity in favor of USF&G's parent company, St. Paul Fire and Marine Insurance Company, in which defendants have promised to exonerate, defend and hold USF&G harmless from any loss, cost or expense which might result from the issuance of any of the aforesaid bonds.  True and correct copies of the Master Surety Agreement, dated June 19, 1996, and the General Contract of Indemnity, dated October 12, 2005, are attached hereto as Exhibit "1" and Exhibit "2," respectively.

5.      USF&G has attempted to locate the Armstrongs for more than a year and a half.  USF&G's efforts in this regard have included, but have not limited to, the engagement of Capitol Investigation and Process Service ("Capitol Investigation"), a private investigative firm located in Birmingham, Alabama.  Capitol Investigation has undertaken searches of the following records in an effort to locate the Armstrongs: Social Security records, credit records, utility records, driving records, motor vehicle records, postal records, telephone records, arrest records, and employment records.

6.      To date, the efforts of Capitol Investigation have result in the discovery of one potential mailing address for the Armstrongs: 4421 Commons Drive East, Suite B-103, Destin, Florida 32541.  All efforts to serve the Armstrong with the Amended

2

Complaint or otherwise communicate with the Armstrongs at this address have unsuccessful.

7. USF&G successfully served the Summons and Amended Complaint on Price Oil via its registered agent for service of process, Todd Armstrong, at 4203 Hoover Circle, Niceville, Florida 32578-8835. By separate letters dated May 14, 2007, and June 1, 2007, USF&G attempted to communicate with Todd Armstrong regarding the whereabouts of the Armstrongs. These communications, copies of which are attached hereto as Exhibit "3" and Exhibit "4," have not been responded to. Additionally, the telephone number associated with this address, (850) 897-5941, has been disconnected.

8. USF&G has also contacted Montgomery attorney H. Dean Mooty, Jr., who is counsel of record for the defendants in *Murphy Oil USA, Inc. v. Elmer Meyers Armstrong, et al.*, Case No. 2:06CV16-SRW, pending in the United States District Court fore the Middle District of Alabama, Northern Division, and has been advised by attorney Mooty that he does not know the present whereabouts of the Armstrongs or how to contact them. A copy of a pleading filed by attorney Mooty in said case attesting to his inability to locate the defendants is attached hereto as Exhibit "5."

9. The Armstrongs were served with the Summons and Complaint within the jurisdictional limits of this Court in *Murphy Oil USA, Inc. v. Elmer Meyers Armstrong, et al.*, Case No. 2:06CV16-SRW, pending in the United States District Court for the Middle District of Alabama, Northern Division, on January 30, 2006. A copy of the returned process in said case is attached hereto as Exhibit "6."

3

{B0730825}

10.    USF&G has recently confirmed that the Armstrongs have filed a civil action styled *Myers Armstrong, et al. v. TaylorChandle, LLC, et al.*, Civil Action Number CV-2007-900098.00, pending in the Circuit Court of Montgomery County, Alabama. The Armstrongs are represented by attorneys J. Doyle Fuller and Susan G. Copeland in such action.    I have spoken with attorney Fuller and have been advised that the whereabouts of his clients are unknown.  According to the Complaint filed in such action, a copy of which is attached hereto as Exhibit "7," the Armstrongs are residents of Montgomery County, Alabama.

11.    The financial collapse of Price Oil and subsequent disappearance of the Armstrongs was also the subject of an article which appeared in the Mobile Press-Register on April 15, 2007.   A copy of this article is attached hereto as Exhibit "8."

12.    It is my opinion that the residence address of the Armstrongs is unknown and cannot be ascertained with reasonable diligence.


FURTHER AFFIANT SAITH NOT

{B0730825}

BRIAN A. DODD

STATE OF ALABAMA          }
                          }
COUNTY OF JEFFERSON       }


Before me, the undersigned Notary Public, in and for said County and in said State, personally appeared BRIAN A. DODD whose name is signed to the foregoing and who is known to me, acknowledged before me this day, that being informed of the contents thereof, voluntarily executed the same on the day of its date.

NOTARY PUBLIC

Given under my hand and seal this the 3rd day of July, 2007.

My Commission Expires:  4-11-09

# Exhibit "1"

UNITED STATES FIDELITY AND GUARANTY COMPANY
FIDELITY AND GUARANTY INSURANCE COMPANY
FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.

### MASTER SURETY AGREEMENT

This AGREEMENT is made and entered into by:
ENTER NAME, ADDRESS, AND SOCIAL SECURITY OR TAX ID NUMBER.

Price Oil, Inc., 700 Oliver Road, Montgomery, AL, 36121, 63-0776220

Myers Armstrong, 8140 Westlakes Place, Montgomery, AL, 36117,
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
Freida Armstrong, 8140 Westlakes Place, Montgomery, AL, 36117,
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

In favor of UNITED STATES FIDELITY AND GUARANTY COMPANY, FIDELITY AND GUARANTY INSURANCE COMPANY, FIDELITY AND GUARANTY
INSURANCE UNDERWRITERS, INC., and any and all affiliated, associated and subsidiary companies thereof, now existing or
hereafter created, assumed or otherwise acquired (hereinafter referred to as SURETY), their successors and assigns.

In this AGREEMENT the words BOND, PERSON, UNDERSIGNED and PRINCIPAL are defined:

BOND: (1) Contract of suretyship, guaranty or indemnity; (2) the continuation, extension, alteration, renewal or
substitution of such contract; (3) a letter from SURETY to a PERSON or PRINCIPAL wherein SURETY represents to such
PERSON or PRINCIPAL that it is prepared and willing to execute in behalf of PRINCIPAL the BOND(S) required by such
PERSON'S invitation for bids or proposals and referred to herein as a BID LETTER.

PERSON:  Individual(s), partnership(s), association(s), corporation(s) or any other legal or commercial entity(ies);

UNDERSIGNED:  PERSON(S) who execute this agreement.

PRINCIPAL:  One or more UNDERSIGNED or any partnership, association, corporation or other legal or commercial entity in
which UNDERSIGNED have a substantial, material and/or beneficial interest to the extent that the partnership,
association, corporation or other legal or commercial entity would be considered a subsidiary, associated or affiliated
company of UNDERSIGNED who, alone or with other PERSON(S), have secured, or may secure the performance and fulfillment
of obligations by BOND(S) (whether or not required to do so by statute, ordinance, contract, order of court, rule of
court, or otherwise), executed, provided, or procured by SURETY.

In consideration of SURETY'S:

(1) heretofore having executed, provided or procured BOND(S) in behalf of PRINCIPAL; or
(2) receiving requests for BOND(S) from UNDERSIGNED and determining whether or not SURETY will execute, provide or
    procure the BOND(S) requested; or
(3) hereafter executing, providing or procuring BOND(S) in behalf of PRINCIPAL;

UNDERSIGNED covenant and agree that:

I (A) This AGREEMENT binds UNDERSIGNED and the heirs, personal representatives, successors and assigns thereof, jointly
and severally, to SURETY in connection with all BOND(S) heretofore or hereafter executed, provided or procured by
SURETY in behalf of PRINCIPAL in any penal sum and in favor of any obligee(s);

CONT S (1-92)                              (CONTINUED)
                                           PAGE 1 OF 4

(8) This AGREEMENT shall not be constru...   an offer by UNDERSIGNED to indemnify SUR.   ich SURETY must accept prior to its executing, providing o... ocuring BOND(S) in behalf of PRINCIPAL, bu... .all be construed as part of the consideration on which SURETY has relied or will rely in executing, providing or procuring BOND(S) in behalf of PRINCIPAL;
(C) SURETY has relied upon and will rely on the covenants and agreements of UNDERSIGNED as consideration for the BOND(S) executed, provided or procured in behalf of PRINCIPAL;
(D) This AGREEMENT inures to the benefit of any cosurety or reinsurer of SURETY in said BOND(S) and in the event SURETY procures the execution of BOND(S) by other sureties, this AGREEMENT shall inure to the benefit of such other sureties.

II UNDERSIGNED will pay or cause to be paid to SURETY, its successors and assigns, the premium charged or to be charged by SURETY for executing, providing or procuring BOND(S) for PRINCIPAL.

III (A) UNDERSIGNED shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all demands, claims, liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY by reason of: (1) SURETY having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT;
(B) In order to exonerate, hold harmless, and indemnify SURETY, UNDERSIGNED shall upon demand of SURETY, place SURETY in funds before SURETY makes any payment; such funds shall be, at SURETY'S option, money or property, or liens or security interests in property. (The amount of such money or property or the value of the property to become subject to liens or security interests, shall be determined by SURETY.)
(C) SURETY may reduce the amount of UNDERSIGNED'S liability to SURETY hereunder by applying to such liability any money payable to UNDERSIGNED by SURETY; (Such liability may arise from UNDERSIGNED'S obligation to exonerate, to hold harmless and to indemnify SURETY and may be liquidated or unliquidated; and, the "money payable to UNDERSIGNED" may be, but is not limited to, any money payable by SURETY as an insurer of UNDERSIGNED or another PERSON to return to UNDERSIGNED an unearned or other premium or to settle a claim of UNDERSIGNED against SURETY or a PERSON insured by SURETY.)

IV (A) The liability of UNDERSIGNED hereunder shall extend to and include all amounts paid by SURETY in good faith under the belief that: (1) SURETY was or might be liable therefor; (2) such payments were necessary or advisable to protect any of SURETY'S rights or to avoid or lessen SURETY'S liability or alleged liability;
(B) the liability of UNDERSIGNED to SURETY shall include interest from the date of SURETY'S payments at the maximum rate permitted in the jurisdiction in which this AGREEMENT is enforced, or is enforceable;
(C) the voucher(s) or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer of SURETY shall be prima facie evidence of the fact and extent of the liability of UNDERSIGNED to SURETY.

V (A) Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising;
(B) each UNDERSIGNED is the agent for all UNDERSIGNED for the purpose of accepting service of any process in the jurisdiction in which the UNDERSIGNED accepting the process resides, is domiciled, is doing business or is found;
(C) in the event SURETY should file suit at law or in equity to enforce the terms of this AGREEMENT, SURETY shall be entitled to recover its own reasonable attorney's fees and expenses from UNDERSIGNED in connection with such suit.

VI When BOND(S) secure the performance and fulfillment of contracts, PRINCIPAL and UNDERSIGNED, agree that:

(A) (1) SURETY has the rights of indemnification, exoneration and subrogation; and (2) SURETY'S rights of indemnification, exoneration and subrogation may be enforced as provided by applicable law or, at option of SURETY, as follows:

(a) with respect to each specific contract secured by BOND(S) all money and property representing the consideration for the contract is dedicated for: (i) the performance of the contract; (ii) the payment of obligation(s) to subcontractor(s), laborer(s) and supplier(s) of material(s) and service(s) incurred or to be incurred in the performance of the contract for which SURETY is liable under BOND(S) and, (iii) the satisfaction of the obligations herein and all other indebtednesses and liabilities of PRINCIPAL or UNDERSIGNED to SURETY;
(b) to partially implement this dedication SURETY may, in its sole discretion, demand that PRINCIPAL request delivery of the consideration for the contract to a bank designated by SURETY for deposit of the proceeds of the consideration for the contract(s) in an account in the name of PRINCIPAL designated as a "Special Account" and withdrawal(s) from said "Special Account" shall be by check(s), payable to the beneficiaries of this dedication, signed by a representative of PRINCIPAL and by a representative of SURETY;
(c) this dedication may be implemented in any other manner provided at law or in equity;

(B) In the event of: (1) any breach of any of the agreements herein; (2) any breach, delay or default in any contract secured by BOND(S); (3) any breach or default of BOND(S); (4) any change or threat of change in the character, identity, control, beneficial ownership or existence of PRINCIPAL; (5) any assignment by PRINCIPAL for the benefit of creditors; (6) the appointment of a receiver or trustee or any application for appointment of a receiver or trustee for PRINCIPAL, whether insolvent or not; (7) any proceedings or the exercise of any rights by any PERSON which deprives or impairs PRINCIPAL'S use of its plant, machinery, equipment, plans, drawings, tools, supplies or material(s); (8) upon the happening of any event other than those specified in (1) through (7) and completely different from those events, which, in its sole opinion may expose SURETY to loss, cost or expense.

(CONTINUED)
PAGE 2 OF 4

(a) SURETY shall have the righ    n its discretion, to take possession of ar    rt or all of the work under contract(s) secured by BOND(S) (to₅  ₅er with plant, machinery, equipment, job be₅₅s and records, plans, drawings, tools, supplies or material wherever located and owned or useable by PRINCIPAL) and, at the expense of UNDERSIGNED, to complete or cause completion of any such work, or relet or consent to the reletting or completion of such contract(s), and;

(b) SURETY is authorized and empowered to assert, pursue and prosecute, in its discretion, and at the expense of UNDERSIGNED (in the name of PRINCIPAL or in the name of SURETY), all claim(s) of PRINCIPAL arising or growing out of contract(s) and work done thereunder secured by BOND(S) against: (i) Obligee(s) in BOND(S); or (ii) any PERSON, government or governmental agency. (The authority and power to prosecute said claim(s) is deemed to include the authority to settle said claim(s) or any part thereof; and the money or property awarded by Obligee(s) representative, a judicial or quasi-judicial officer or a panel or board, or the money or property to become due in settlement of said claim(s) is deemed to be a portion of the "money or property representing the consideration for the contract" and subject to the dedication in subparagraph (A) of this paragraph).

VII (A) UNDERSIGNED are not obligated to request SURETY to execute, provide or procure BOND(S) required of them in the performance and fulfillment of obligations;

(B) SURETY has the right to decline to execute, provide or procure BOND(S) requested by PRINCIPAL;

(C) if SURETY executes, provides or procures a bid or proposal bond or furnishes a BID LETTER in behalf of PRINCIPAL, SURETY has the right to decline to execute the final BOND(S) (including, but not limited to performance, payment or maintenance bond(s)) that may be required in connection with any award that may be made under the bid, proposal or tender for which the bid or proposal bond or BID LETTER is given.

VIII UNDERSIGNED shall not be relieved of liability hereunder by any change, addition, substitution, continuation, renewal, extension, successor or new obligation in connection with BOND(S) or any contract(s) secured thereby, whether known or consented to by SURETY, and notice of SURETY'S consent is hereby waived.

IX (A) SURETY'S rights hereunder shall be deemed to be cumulative with, and in addition to, all other rights of SURETY, however derived;

(B) SURETY is not required to exhaust its remedies or rights against PRINCIPAL or to await receipt of any or final dividends from the legal representative(s) of PRINCIPAL before asserting its rights hereunder against UNDERSIGNED;

(C) This AGREEMENT shall be liberally construed so as to protect, hold harmless, exonerate and indemnify SURETY.

X (A) At any time during business hours and until such time as (1) the liability of SURETY under BOND(S) is terminated or (2) SURETY is fully reimbursed all its losses, cost and expenses as a result of having executed, provided, or procured BOND(S) in behalf of PRINCIPAL, SURETY shall have access to the books, records and accounts of UNDERSIGNED;

(B) when requested by SURETY, banks, depositories, obligees in BOND(S), materialmen, supply houses, or other PERSON(S) are hereby authorized to furnish SURETY any information requested with respect to PRINCIPAL, or UNDERSIGNED.

XI (A) There shall be no waiver, modification or change of the terms of this AGREEMENT without the written approval of an officer of SURETY;

(B) if an UNDERSIGNED previously executed an agreement of indemnity or MASTER SURETY AGREEMENT in favor of SURETY and upon which SURETY relied when it executed, provided or procured BOND(S) in behalf of any PERSON as PRINCIPAL, SURETY'S acceptance of this AGREEMENT neither terminates such agreement of indemnity or MASTER SURETY AGREEMENT nor relieves such UNDERSIGNED from liability to SURETY thereon in connection with such BOND(S).

(C) this AGREEMENT may be terminated as to any UNDERSIGNED upon written notice given to SURETY by such UNDERSIGNED or such UNDERSIGNED'S legal representatives or successors by Registered or Certified Mail addressed to SURETY at its Home Office in Baltimore, Maryland;

(D) if an UNDERSIGNED: (1) dies; (2) becomes physically or mentally disabled to the extent that he or she is unable to perform the duties of owner, partner, officer or employee of an UNDERSIGNED which is or may become PRINCIPAL in BOND(S); (3) terminates his or her marriage by annulment or divorce; or, (4) sells or disposes of his or her interest in an UNDERSIGNED which is or may become PRINCIPAL in BOND(S); this AGREEMENT may be terminated as to such UNDERSIGNED upon receipt by SURETY at its Home Office in Baltimore, Maryland, of written notice of such death, disability, annulment, divorce, sale or disposition (such written notice shall be given as specified in Subparagraph XI (C);

(E) termination of this AGREEMENT pursuant to Subparagraph XI (C) or XI (D) shall not be effective until thirty (30) days after receipt of said written notice by SURETY;

(F) termination of this AGREEMENT pursuant to Subparagraph XI (C) or XI (D) shall not relieve any UNDERSIGNED from liability to SURETY arising out of BOND(S) executed, provided or procured by SURETY in behalf of PRINCIPAL prior to the effective date of such termination and for which this AGREEMENT is part of the consideration on which SURETY relied in executing, providing or procuring such BOND(S).

XII In the event that the execution of this AGREEMENT by any one or more of UNDERSIGNED is defective or invalid for any reason, such defect or invalidity shall have no effect upon the validity of this AGREEMENT as to any other UNDERSIGNED. Similarly, should any portion of this AGREEMENT be deemed invalid or unenforceable, the remaining provisions shall be valid and enforceable.

XIII This AGREEMENT constitutes the entire AGREEMENT between the parties and all previous representations, negotiations, discussions and promises concerning SURETY'S willingness to provide, procure or execute bonds in any specific amount, single limit or aggregate work program, or concerning SURETY'S intention to enforce or refrain from enforcing any of the terms of this AGREEMENT or exempt any specific assets or waive any of the terms hereof are hereby merged into this AGREEMENT.

(CONTINUED)
PAGE 3 OF 4

DEC 28 2005 17:52 FR STPAUL TRAVELERS BOND  2059824590 TO CSAMS          P.04/08

Case 2:06-cv-00372-WHA-WC    Document 1-2    Filed 04/24/2006    Page 5 of 9

## C∠.    :ON!  READ BEFORE SIGNING!

THE UNDERSIGNED represent to the SURETY that they have carefully read the entire AGREEMENT and that by executing this AGREEMENT they
are bound to the SURETY with respect to all BOND(S) executed, provided, or procured or to be executed, provided or procured by
SURETY in behalf of PRINCIPAL as defined on page 1.

IN WITNESS WHEREOF, the UNDERSIGNED who are individuals have hereunto set their hands and seals, and the UNDERSIGNED who are
partnerships, corporations or unincorporated associations have caused this AGREEMENT to be duly executed by their duly authorized
representatives all on this ___19th___ day of ___June___, ___1996___

Attest: _____        Price Oil, Inc.
            Secretary                   _____ President

WITNESS: _____

ADDRESS:

WITNESS: _____        _____
                                         Myers Armstrong

ADDRESS:                                 _____
                                         Freida Armstrong

## ALL SIGNATURES MUST BE WITNESSED

IF A CORPORATION, AFFIX SEAL. ATTACH COPY OF BOARD OF DIRECTORS RESOLUTION RATIFYING OFFICER'S EXECUTION OF THIS AGREEMENT.
PAGE 4 OF 4

DEC 28 2005 17:52 FR STPAUL TRAVELERS BOND  2059824590 TO CSAMS          P.05/08

UNITED STATES FIDELITY AND GUARANTY COMPANY
FIDELITY AND GUARANTY INSURANCE COMPANY
FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.

## MASTER SURETY AGREEMENT

### RESOLUTION AND CERTIFICATION

WHEREAS, the <u>President</u> and <u>Secretary</u> of this Corporation have executed or will execute a certain Master Surety AGREEMENT, a copy of which is attached hereto and made a part hereof, in favor of United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc. and all affiliated, associated, and subsidiary companies thereof, now existing or hereafter created, assumed or otherwise acquired, their successors and assigns, hereinafter referred to as Surety, protecting it in connection with its assuming suretyship as more fully described therein, said Master Surety AGREEMENT having been read at this meeting and fully considered and approved by the directors present; and

WHEREAS, the said Master Surety AGREEMENT has been or will be accepted by Surety upon the warranty of the said officers that this Corporation has such an interest in said suretyship as to empower it to make said Master Surety AGREEMENT.

NOW, THEREFORE, BE IT RESOLVED that the said officers of this Corporation be, and are hereby, authorized to execute on behalf of this Corporation the said Master Surety AGREEMENT, and that the acts of said officers of this Corporation who may have already executed said Master Surety AGREEMENT are hereby unanimously ratified and confirmed as the acts of this Corporation.

BE IT FURTHER RESOLVED that the aforesaid warranty that this Corporation has such an interest in said suretyship as to empower it to make said Master Surety AGREEMENT be, and it is hereby, ratified and confirmed as the warranty of this Corporation.

I hereby certify that I am <u>President</u> of <u>Price Oil, Inc.</u>, and that the above Resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on the 19<u>th</u> day of <u>June</u>, 19<u>96</u>, in the office of the said Corporation, at which meeting a quorum of the Directors were present.

IN WITNESS WHEREOF I have hereunto set my hand and the corporate seal of the Corporation, this 19th day of <u>June</u>, 1996 .

(AFFIX CORPORATE SEAL)

Contract 265 (4-92)

Case 2:06-cv-00372-WHA-WC    Document 35-2    Filed 07/03/2007    Page 12 of 40
DEC 28 2005 17:33 FR STPAUL TRAVELERS BOND   2059824590 TO CSAMS            P.06/08
Case 2:06-cv-00372-WHA-WC    Document 1-2    Filed 04/24/2006    Page 7 of 9

Price Oil, Inc.                                              August 7, 1996
700 Oliver Road
Montgomery, AL 36121


    The USF&G/FGIC/FGIU hereby acknowledges receipt of the
Master Surety Agreement/General Agreement of Indemnity dated
June 19, 1996.  A copy of the said Master Surety
Agreement/General Agreement of Indemnity is attached hereto
for your file.

    Also attached for your files is a photocopy/are
photocopies of the Resolution(s) and Certification(s) dated
June 19, 1996 that accompanies the aforementioned
Master Surety Agreement/General Agreement of Indemnity.


                    Very truly yours,

        UNITED STATES FIDELITY AND GUARANTY COMPANY
        FIDELITY AND GUARANTY INSURANCE COMPANY
        FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.


                By:_____

                  Connie McCulloch, Surety Dept.

DEC 28 2005 17:33 FR STPAUL TRAVELERS BOND  2059824590 TO CSAMS          P.07/08

Myers Armstrong                                        August 7, 1996
8140 Westlakes Place
Montgomery, AL 36117


     The USF&G/FGIC/FGIU hereby acknowledges receipt of the
Master Surety Agreement/General Agreement of Indemnity dated
June 19, 1996.  A copy of the said Master Surety
Agreement/General Agreement of Indemnity is attached hereto
for your file.

     Also attached for your files is a photocopy/are
photocopies of the Resolution(s) and Certification(s) dated
June 19, 1996 that accompanies the aforementioned
Master Surety Agreement/General Agreement of Indemnity.


                         Very truly yours,

          UNITED STATES FIDELITY AND GUARANTY COMPANY
          FIDELITY AND GUARANTY INSURANCE COMPANY
          FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.


               By:_____

               Connie McCulloch, Surety Dept.

Case 2:06-cv-00372-WHA-WC    Document 35-2    Filed 07/03/2007    Page 14 of 40
DEC 28 2005 17:33 FR STPAUL TRAVELERS BOND  2059824590 TO CSAMS          P.09/09
Case 2:06-cv-00372-WHA-WC    Document 1-2    Filed 04/24/2006    Page 9 of 9

Freida Armstrong                                       August 7, 1996
8140 Westlakes Place
Montgomery, AL 36117

    The USF&G/FGIC/FGIU hereby acknowledges receipt of the
Master Surety Agreement/General Agreement of Indemnity dated
June 19, 1996.  A copy of the said Master Surety
Agreement/General Agreement of Indemnity is attached hereto
for your file.

    Also attached for your files is a photocopy/are
photocopies of the Resolution(s) and Certification(s) dated
June 19, 1996 that accompanies the aforementioned
Master Surety Agreement/General Agreement of Indemnity.

Very truly yours,

        UNITED STATES FIDELITY AND GUARANTY COMPANY
        FIDELITY AND GUARANTY INSURANCE COMPANY
        FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.

            By:_____

            Connie McCulloch, Surety Dept.

# Exhibit "2"

**General Contract**
**Of Indemnity**
**(Form A)**

TRAVELERS CASUALTY AND    R..Y COMPANY OF AMERICA
Hartford, Connecticut 06183

We, the undersigned, hereinafter referred to, individually and/or collectively, as "Indemnitors," hereby request, have requested and/or will request TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns, hereinafter referred to, individually and/or collectively, as "Company," to furnish bonds, undertakings, guarantees, and/or contractual obligations, including renewals and extensions thereof, executed or procured by Company, whether before or after the date of this Agreement, and bonds and undertakings for which Company has obligations as a result of an asset purchase, acquisition, merger or like transaction, hereinafter referred to, individually and/or collectively, as "Bond(s)." As an inducement therefore we make the following representations of fact, promises and agreements:

**REPRESENTATIONS OF FACT:**

1. In the transaction of business one, some or all of the Indemnitors are required, or may desire to give such Bond(s).

2. Indemnitors have a substantial, material and beneficial interest (a) in the obtaining of Bond(s) by any of the Indemnitors and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bond(s) pursuant to this General Contract of Indemnity, hereinafter referred to as "Agreement." It is understood that the purpose of this Agreement is to induce Company to furnish Bond(s); however, Company is under no obligation to furnish Bond(s) to Indemnitors.

3. Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a default thereunder.

**PROMISES AND AGREEMENTS:** In consideration of the furnishing of any such Bond, the forbearance of cancellation of any existing Bond(s) by Company, the assumption of obligations by Company of any Bond, and for other valuable consideration, Indemnitors hereby jointly and severally promise and agree as follows:

1. To pay all premiums for each Bond, as they fall due, until Company has been provided with competent legal evidence that the Bond has been duly discharged.

2. To indemnify and exonerate Company from and against any and all loss, cost and expense of whatever kind, including unpaid premiums, interest, court costs and counsel fees, as well as any expense incurred or sustained by reason of making any investigation which it may incur or sustain as a result of or in connection with the furnishing of Bond(s), the assumption of obligations of Company of Bond(s), and/or the enforcement of this Agreement, hereinafter referred to as "Loss." To this end Indemnitors promise:

   (a) To promptly reimburse Company for all sums paid on account of such Loss and it is agreed that (1) originals or photocopies of claim drafts, or of payment records, kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss, (2) Company shall be entitled to reimbursement for any and all disbursements made by it, under the belief that it was liable, or that such disbursement was necessary or expedient.

   (b) To deposit with Company, on demand, the amount of any reserve against such Loss which Company is required, or deems it prudent to establish whether on account of an actual liability or one which is, or may be, asserted against it and whether or not any payment for such Loss has been made.

3. This Agreement shall apply to any and all Bond(s) furnished as follows:

   (a) If Company executes the Bond(s), procures the execution of Bond(s) by other sureties, executes Bond(s) with co-sureties and/or obtains reinsurance;

   (b) For or on behalf of any or all of the following:

      (1) One, some or all of the Indemnitors;

      (2) Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;

      (3) Any present or future affiliate and/or subsidiary of Indemnitors;

      (4) Any third party at the request of Indemnitors, their subsidiaries and/or affiliates.

4. (a) The validity and effect of this Agreement shall not be impaired by and Company shall incur no liability on account of, and Indemnitors need not be notified of:

(1) Company's failure or refus... .ish Bond(s), including but not limited to . J....id(s) where Company has furnished a bid Bond.

(2) Company's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond.

(3) The taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond.

(4) The release by Company, on terms satisfactory to it, of any Indemnitors.

(5) Information which may come to the attention of Company which affects or might affect its rights and liabilities or those of any of the Indemnitors.

(b) The validity and effect of this Agreement shall not be impaired by and Company shall incur no liability on account of the cancellation or termination of any Bond(s).

5. Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Company under this Agreement have been satisfied in full.

6. Company shall have the right, in its sole discretion, (a) to deem this Agreement breached should any Indemnitors become involved in any agreement or proceeding of liquidation, receivership, bankruptcy, insolvency or creditor assignment, whether voluntarily or involuntarily, or should any Indemnitors, if an individual, die, or be convicted of a felony, become a fugitive from justice, or for any reason disappear and cannot immediately be found by Company by use of usual methods, and (b) to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond(s).

7. If Company has or obtains collateral or letters of credit, Company shall not have any obligations to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Company with respect to each and every Bond. Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be applied to any Loss.

8. Indemnitors also understand and agree that their obligations remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

9. This Agreement shall remain in full force and effect until terminated. Indemnitors may only terminate participation in this Agreement by providing written notice to the Company of Indemnitors' intent to terminate. Such notice shall be addressed to St. Paul Travelers Bond, Attention: Senior Vice President Commercial Surety, One Tower Square, Hartford, Connecticut 06183. Such notice of termination shall become effective thirty (30) days after Company's receipt of the same. The obligations and liability of Indemnitors giving such notice shall thereafter be limited to Bond(s) furnished before the effective date of notice, which liability shall include any Bond(s) which were originally issued prior to the effective date of notice and renewed or otherwise extended subsequent to the notice or effective date of termination.

10. Indemnitors hereby expressly authorize Company to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection. To the extent required by law, Company will, upon request, provide notice whether or not a consumer report has been requested by Company, and if so, the name and address of the consumer reporting agency furnishing the report.

11. In the event of a claim or notice of a potential claim, Company shall have the right, at all times, to free access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.

12. Company may furnish copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors, to other persons or companies for the purpose of procuring co-suretyship or reinsurance.

13. A duplicate or facsimile copy or electronic reproduction of the original document shall have the same force and effect as the original.

14. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

15. If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.

16. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Company, whether now existing or entered into hereafter.

17. The rights and remedies afforded to Company by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized employee of the Company.

18. Company's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

19. The date of this agreement shall be the earliest date any Indemnitor executes this Agreement.

20. Special Provisions: n/a

S-2412A (04-04)

. WE HAVE READ THIS CONTRACT  F ..NDEMNITY CAREFULLY. THERE /  I ..J SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH. IN TESTIMONY HEREOF, THE INDEMNITORS HAVE SET THEIR HANDS AND FIXED THEIR SEALS AS SET FORTH BELOW.

## If Indemnitor an Individual, sign below:

Instructions: Signatures of Individual Indemnitors must be witnessed. Indemnitors must include their Social Security Number. All signatures must be dated with names printed or typed on the line provided.

| | | |
|---|---|---|
| _(signature)_ 18-12-05 _(Date)_ | _Myers Armstrong_ 10/12/05 _(Date)_ | |
| _Cindy Brown_ | _Myers Armstrong_ | |
| | SS# 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 | |
| _Camla Owens_ 10/12/05 _(Date)_ | _Freida Armstrong_ 10-12-05 _(Date)_ | |
| _Camla Owens_ | _Freida Armstrong_ | |
| | SS# 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 | |

## If Indemnitor a Corporation, Limited Liability Company or Partnership, sign below:

Instructions:  If the company is:  1) a Corporation the Secretary and an Authorized Officer should sign on behalf of the Corporation, 2) a Limited Liability Corporation the Manager or Member(s) should sign on behalf of the LLC, or 3) a Partnership the Partner(s) should sign on behalf of the partnership.  Two signatures are required for all companies and all signatures must be notarized and dated. Please provide the company's federal tax identification number on the line provided.

Each of the undersigned hereby affirms to Company as follows:  I am a secretary or a duly authorized officer, manager or official of each of the business entities which entered into this Agreement as an Indemnitor.  In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity.  Having reviewed all such applicable documents and instruments and such other facts as I deem appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individual executing this Agreement on behalf of such entity is duly authorized to do so.

_Price Oil, Inc._
(Indemnitor Name)

63-0776220
(Federal Tax I.D.)

_(signature)_                                    (Seal)
(Company Name)

_Cindy Brown    Secretary_  9-28-05
(Title)                                        (Date)

_Todd Armstrong_                                (Seal)
(Company Name)

_Todd Armstrong    CEO_          9/28/05
(Title)                                        (Date)

ACKNOWLEDGEMENT
STATE OF _ALABAMA_                County of _MONTGOMERY_

On this _28th_ day of _September_, _2005_, before me personally appeared _CINDY BROWN_, known or proven to me to be the _SECRETARY_ of the corporation and _TODD ARMSTRONG_, known or proven to me to be the _CEO_ of the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that they executed said instrument by authority of the Board of Directors of said corporation.  IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_(signature)_
Notary Public residing at _Montgomery    AL_
(Commission expires _9/28/08_ )

# Exhibit "3"

**Brian A. Dodd**
P.O. Box 598512
Birmingham, AL 35259-8512
(205) 868-6011
Facsimile: (205) 868-6099
E-mail: bdodd@starneslaw.com

May 14, 2007

Mr. Todd Armstrong                     **COPY**
4203 Cougar Circle
Niceville, FL 32578-8835

      RE:   <u>United States Fidelity and Guaranty Company v. Elmer Meyers Armstrong,</u>
      <u>et al.</u>

            In the United States District Court for the Middle District of Alabama,
            Northern Division
            Case No.: 2:06 CV 372-VPM
            Our File No.: 23179

Dear Mr. Armstrong:

    This firm represents United States Fidelity & Guaranty Company ("USF&G"), the plaintiff in the above-referenced matter. Our client previously issued a series of bonds on behalf of Price Oil, Inc. ("Price Oil") to secure the payment of federal and state excise taxes. USF&G has sustained significant losses under these bonds and is seeking a judgment against Price Oil and your parents Elmer Meyers Armstrong and Freda Armstrong.

    You were served with a Summons and Complaint as the registered agent for Price Oil in March. Please be advised that Price Oil is now in default and that we intend to seek a judgment against Price Oil shortly.

    We are also attempting to locate your parents but have been unsuccessful to date. Upon your receipt of this letter, please contact either Tom Selden or the undersigned to discuss this matter as well as your parents current whereabouts. Your prompt attention to this matter will be greatly appreciated.

                  Sincerely,

                  STARNES & ATCHISON llp

                  Brian A. Dodd

{B0710552}

# Exhibit "4"

**Brian A. Dodd**
P.O. Box 598512
Birmingham, AL 35259-8512
(205) 868-6011
Facsimile: (205) 868-6099
E-mail: bdodd@starneslaw.com

**COPY**

June 1, 2007

Mr. Todd Armstrong
4203 Cougar Circle
Niceville, FL 32578-8835

      RE:   <u>United States Fidelity and Guaranty Company v. Elmer Meyers Armstrong, et al.</u>

           In the United States District Court for the Middle District of Alabama, Northern Division
           Case No.: 2:06 CV 372-VPM
           Our File No.: 23179

Dear Mr. Armstrong:

      Following my letter of May 14, please contact either Tom Selden or the undersigned to discuss this matter as soon as possible. Your prompt attention to this matter is greatly appreciated.

           Sincerely,

           STARNES & ATCHISON llp

           Brian A. Dodd

BAD/sdc
c:    Thomas Selden, Esq.

{B0719739}

# Exhibit "5"

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **MURPHY OIL USA, INC., a corporation,** | ) | 2006 JUN 28 A 9: 22 |
| | ) | |
| | ) | DEBRA P. H |
| **Plaintiff(s),** | ) | U.S. DIST |
| | ) | MIDDLE D |
| | ) | |
| **v.** | ) | **Civil Action No. 2:06-cv-16-SRW** |
| | ) | |
| **ELMER MYERS ARMSTRONG,** | ) | |
| **an individual, and FREIDA** | ) | |
| **ARMSTRONG, an individual,** | ) | |
| | ) | |
| **Defendant(s).** | ) | |

## RESPONSE TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

The undersigned filed an appearance in this matter on behalf of Elmer Myers Armstrong and Freida Armstrong. This is an action to enforce personal guarantees provided by the Armstrongs for obligations regarding fuel purchases of Price Oil, Inc. from Plaintiff, Murphy Oil USA, Inc. Murphy Oil has now filed a Motion for Summary Judgment. The Armstrongs have no resources with which to defend this matter, much less satisfy any resulting judgment.

Accordingly, no response will be filed to Plaintiff's Motion for Summary Judgment, and the undersigned assumes the Court will proceed to enter a judgment in favor of Murphy Oil on that basis.

The undersigned would like to provide a little background information on this matter. Myers and Freida Armstrong were the owners of Price Oil, Inc., a corporation involved in the wholesale and retail gasoline industry, with its principal office in Montgomery, Alabama. The Armstrongs retired approximately eight (8) years ago and were not involved in the day-to-day running of the business. Due to a bad and deteriorating financial condition of the company,

unknown to the Armstrongs, they returned in early Fall to try and save the business. Their efforts were unsuccessful, and a Chapter 11 voluntary petition in bankruptcy was filed in the U. S. Bankruptcy Court for the Middle District of Alabama, Case No. 05-34286. The company's assets have been sold, and Price Oil ceased business operations a number of months ago. The Armstrongs' activities with Price Oil also ended a number of months ago. The Armstrongs not only did not receive a dime from the bankruptcy proceeding, they lost everything, including their home. The Armstrongs are in their early 60s and their retirement some eight years ago was due largely to Mr. Armstrong's health which includes various cardiac issues, prior heart attacks and related problems, angioplasties, etc. Even so, the Armstrongs are now in a position of having to find jobs in order to live.

The undersigned does not know the Armstrongs' whereabouts. The undersigned previously requested a brief extension of time to respond to Plaintiff's written discovery in that he had been unable to get such discovery to the Armstrongs, much less prepare responses to them. He has still been unable to do so. The undersigned would prefer not to withdraw from this proceeding due to his almost 20-year working and personal relationship with the Armstrongs. Respectfully, the undersigned would simply ask that he continue to be copied with any filings of the Plaintiff and actions of the Court in this matter.

Respectfully submitted,

H. Dean Mooty, Jr. (MO0018)
Attorney for Elmer Myers Armstrong and
Freida Armstrong

OF COUNSEL:

2

MOOTY & ASSOCIATES, P.C.
600 Clay Street
Montgomery, Alabama 36104
Telephone:    (334)264-0400
Facsimile:    (334)264-0380
E-mail:    hdm@mooty-assoc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon John P. Scott, Jr., Esq. and Bryan G. Hale, Esq., Starnes & Atchison, LLP, Post Office Box 598512, Birmingham, Alabama 35259-8512, by depositing a copy of same in the United States Mail, first class postage prepaid and properly addressed on this the 27 day of June, 2006.

_____
Of Counsel

# Exhibit "6"

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

MURPHY OIL USA, INC., a                )
corporation,                           )
                                       )
         **Plaintiff,**                )
                                       )
vs.                                    )
                                       )    **CIVIL ACTION NO. 2:06-cv-16-**
ELMER MYERS ARMSTRONG, an              )    **SRW**
individual, and FREIDA                 )
ARMSTRONG, an individual               )
                                       )
         **Defendant.**                )

## ALIAS SUMMONS

NOTICE TO:            FRIEDA ARMSTRONG
                      700 Oliver Road
                      Montgomery, Alabama 36117

You are hereby summoned and required to serve upon John P. Scott, Jr., attorney for plaintiff Murphy Oil, USA, Inc., a corporation, whose address is STARNES & ATCHISON LLP, 100 Brookwood Place, Seventh Floor, Post Office Box 598512, Birmingham, Alabama 35259-8512, an answer to the Complaint which is herewith served upon you, within 20 days after service of this Summons upon you, exclusive of the day of service. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT. A signed copy of your response MUST also be filed with the court.

DATE: ___1/30/06___                DEBRA P. HACKETT , CLERK
      DEPUTY CLERK                 BY: _____

                                   [SEAL OF THE U.S. DISTRICT COURT]

                                   CLERK, UNITED STATES DISTRICT COURT
                                   MIDDLE DISTRICT OF ALABAMA
                                   United States Courthouse
                                   One Church Street
                                   Montgomery, Alabama 36104

{B0563954}

## RETURN ON SERVICE OF WRIT

I hereby certify and return that on the _3 0_ day of _Jan_, 2006, I served this summons together with the complaint as follows:

☒    By personal service on the defendant at _700 Oliver Road, Montgomery, AL 36117._

☐    By serving a person of suitable age and discretion then residing in the defendant's usual place of abode. (Give name and address of person served.)

_____

☐    By serving an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process of the defendant corporation, partnership, or unincorporated association. (Give name, capacity and address of person served.)

_____

_I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct._

                          629-20th. Ct, NE

_Jan. 30, 2006_      _Larry G. Harris_ Birmingham, AL 35215
Date          Authorized or Specially Appointed Process Server

I hereby certify and return this _____ day of _____, 2006, that I am unable to locate the individual, company, corporation, etc. named in this summons.

_I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct._

_____      _____
Date                  Authorized or Specially Appointed Process Server

Cost of Service:    Service fee: 45.00
                Expenses: _____ miles @ .50 cents      $ _____
                                                $ _____

**RETURNED AND FILED**

                                          TOTAL:     $ _____

{B0560363}

**JAN 3 0 2006**

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MURPHY OIL USA, INC., a                )
corporation,                            )
                                        )
    Plaintiff,      )
                                        )
vs.                                     )
                                        )    CIVIL ACTION NO. 2:06-cv-16-
ELMER MYERS ARMSTRONG, an               )    SRW
individual, and FREIDA                  )
ARMSTRONG, an individual                )
                                        )
    Defendant.       )

### ALIAS SUMMONS

NOTICE TO:        ELMER MYERS ARMSTRONG
                700 Oliver Road
                Montgomery, Alabama  36117

      You are hereby summoned and required to serve upon John P. Scott, Jr., attorney for plaintiff Murphy Oil, USA, Inc., a corporation, whose address is STARNES & ATCHISON LLP, 100 Brookwood Place, Seventh Floor, Post Office Box 598512, Birmingham, Alabama 35259-8512, an answer to the Complaint which is herewith served upon you, within 20 days after service of this Summons upon you, exclusive of the day of service.  IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.  A signed copy of your response MUST also be filed with the court.

DATE: ___1/30/06___          DEBRA P. HACKETT , CLERK
        DEPUTY CLERK      BY:_____

                        [SEAL OF THE U.S. DISTRICT COURT]

                        CLERK, UNITED STATES DISTRICT COURT
                        MIDDLE DISTRICT OF ALABAMA
                        United States Courthouse
                        One Church Street
                        Montgomery, Alabama 36104

{B0563952}

## RETURN ON SERVICE OF WRIT

I hereby certify and return that on the _30_ day of _Jan_, 2006, I served this summons

together with the complaint as follows:

☒ By personal service on the defendant at _700 Oliver Rd., Montgomery, AL 36117._

☐ By serving a person of suitable age and discretion then residing in the defendant's
usual place of abode. (Give name and address of person served.)
_____

☐ By serving an officer, a managing or general agent, or any other agent authorized by
appointment or by law to receive service of process of the defendant corporation,
partnership, or unincorporated association. (Give name, capacity and address of
person served.)
_____

*I certify under penalty of perjury under the laws of the United States*
*of America that the foregoing is true and correct.*

_629-20th. Ct. NE_

_Jan. 30, 2006_          _Larry X. Harris_   _Birmingham, AL 35215_
Date                     *Authorized or Specially Appointed Process Server*

I hereby certify and return this _____ day of _____, 2006, that I am unable to

locate the individual, company, corporation, etc. named in this summons.

*I certify under penalty of perjury under the laws of the United States*
*of America that the foregoing is true and correct.*

_____    _____
Date                     *Authorized or Specially Appointed Process Server*

Cost of Service:    Service fee: _$45,00_          $ _____
                    Expenses: _____ miles @ _.50_ cents      $ _____

                                          TOTAL    $ _____

                                     RETURNED AND FILED

{B0560363}

                                     JAN 3 0 2006

                                          CLERK
                                 U. S. DISTRICT COURT
                                 MIDDLE DIST. OF ALA.

# Exhibit "7"

ELECTRONICALLY FILED
2/12/2007 3:04 PM
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
MELISSA RITTENOUR, CLERK

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| **MYERS ARMSTRONG, individually** | ) |
| **and as a shareholder of Price Oil, Co.;** | ) |
| **FREDA ARMSTRONG, individually** | ) |
| **and as a shareholder of Price Oil, Co.,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **TAYLORCHANDLER, LLC,** | ) |
| **a limited liability company; T. BRITT** | ) |
| **TAYLOR, individually and as a member** | ) |
| **of TaylorChanler, LLL;NORMAN** | ) |
| **CHANDLER, individually  and as a** | ) |
| **member of TaylorChandler, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

### COMPLAINT

COMES NOW the Plaintiffs, Myers Armstrong and Freda Armstrong, and file

their Complaint against Defendant Taylor Chandler, LLC by stating and showing as

follows:

### PARTIES

1.  Freda Armstrong is an adult resident of Montgomery County, Alabama.  Freda

    Armstrong was a shareholder of Price Oil, Inc. and accordingly, she has standing

    to bring this action individually, and derivatively on behalf of Price Oil, Inc.

    Price Oil, Inc. was a corporation duly organized and existing under the laws of the

    State of Florida, conducting business throughout Alabama with its corporate

    office in Montgomery County, Alabama.

2.  Myers Armstrong is an adult resident of Montgomery County, Alabama.  Myers

    Armstrong was a shareholder of Price Oil, Inc. and accordingly, he has standing

    to bring this action individually, and derivatively on behalf of Price Oil, Inc.

3. Taylor Chandler is a limited liability company organized and existing under the laws of the State of Alabama, with its principal place of business in Montgomery County, Alabama.

4. T. Britt Taylor is a member of TaylorChandler, LLC. Taylor performed accounting and auditing services for Price Oil, Inc.

5. Norman Chandler is a member of TaylorChandler, LLC. Chandler performed accounting and auditing services for Price Oil, Inc.

6. Plaintiffs contracted with the Defendant to perform certain professional services in Defendants' capacity as public accountants, to wit: performing audits, fraud investigation and consulting advice and financial services for the years 2003-2004.

7. Plaintiffs became aware of certain facts that for the first time caused him to believe that Defendants had not performed their duties as they should have, namely: Defendants failed to provide accounting services, including audits, in compliance with generally accepted auditing standards and principles, failed to adequately perform audit functions, failed to properly investigate matter and failed to report findings to the Plaintiffs that accurately reflected the true financial condition of Price Oil, Inc.

## COUNT I - MALPRACTICE

8. Defendants failed to perform its duties in the same manner as an accountant who possessed and exercised ordinary and reasonable skills and knowledge practicing in Alabama and Defendant was thereby negligent and wanton in that Defendants

2

negligently and wantonly failed to provide accounting services, including audits,
in compliance with generally accepted auditing standards and principles, failed to
adequately perform audit functions, failed to properly investigate matter and
failed to report findings to the Plaintiffs that accurately reflected the true financial
condition of Price Oil, Inc.

9.  As a proximate result of the Defendants' said negligence and wantonness, the
Plaintiffs were caused to suffer millions of dollars in damages which essentially
destroyed the viability of Price Oil, Inc.

COUNT II – BREACH OF CONTRACT

10. Plaintiffs reassert and reallege each and every allegation heretofore stated in this
Complaint as if fully set out herein.

11. Plaintiffs entered into contracts for services with the Defendants.  These services
included auditing services, consulting and advisory services, and fraud
investigation.

12. Defendants breached its contract with the Plaintiffs.

13. The Plaintiffs have incurred damages proximately caused by the Plaintiffs breach
of these contracts.

COUNT III - SUPPRESSION

14. Plaintiffs reassert and reallege each and every allegation heretofore stated in this
Complaint as if fully set out herein.

15. Defendants, in performance of their duties to the Plaintiffs had a duty to perform
auditing services in compliance with generally accepted auditing standards and to
report the true financial condition of Price Oil, Inc. to the Plaintiffs.

3

16. By failing to comply with generally accepted auditing standards, Defendants negligently and/or willfully failed to disclose the true financial condition to the Plaintiffs and knowingly suppressed this information.

17. As a consequence of the Defendants' suppression of the true financial condition of Price Oil, Inc., the Plaintiffs acted or failed to act to their detriment. Specifically, by relying on the erroneous financial condition of Price Oil, Inc. as conveyed to the Plaintiffs by the Defendants, the Plaintiffs failed to uncover various acts of mismanagement with the officers and employees of Price Oil until after Price Oil, Inc. was virtually insolvent.

18. As a proximate result of said suppression, the Plaintiffs are entitled to recover compensatory and punitive damages because of the intentional, wanton, and reckless conduct of the Defendants.

COUNT IV – BREACH OF FIDUCIARY DUTY

19. Defendants' conduct as outlined herein has been knowingly and intentionally wrongful, willful, and or committed with willful and reckless disregard for its statutory and fiduciary duties to the Plaintiffs and Price Oil.

20. As a consequence of said misconduct, the Plaintiffs are entitled to recover actual and punitive damages from the Defendants as a result of the Defendants' breach of its fiduciary duties.

21. The Plaintiffs have been damaged to the extent that the Defendants' breach of their fiduciary duties caused financial ruin to the Plaintiffs and Price Oil.

DEMAND FOR JUDGMENT

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court

4

(1) Award the Plaintiffs actual compensatory damages;

(2) Award punitive damages as are necessary to punish Defendants for such conduct

and deter similarly situated persons from acting in a similar manner;

(3) Award such other and further relief that the Court may deem just and proper in

the premises.

JURY DEMAND

Plaintiffs hereby request a trial by struck jury in this matter.

/s/ J. DOYLE FULLER
J. DOYLE FULLER (FUL005)


/s/ SUSAN G. COPELAND
SUSAN G. COPELAND (COP009)

OF COUNSEL:
LAW OFFICE OF
J. DOYLE FULLER, LLC
2851 Zelda Road
Montgomery, Alabama 36106
(334) 270-0020

Please serve:

TaylorChandler, LLC
200 Interstate Park Drive, Suite 227
Montgomery, Alabama 36109

T. Britt Taylor
4113 Ray Drive
Montgomery, Alabama 36109

Norman Chandler
546 Ridge Park Drive
Montgomery, Alabama 36117

5

# Exhibit "8"



**Everything Alabama**

# PRESS-REGISTER

## High Price tag

**Owners of gas distributor appear to vanish after bankruptcy; state stands to lose about $2.8 million from Price Oil collapse**

Sunday, April 15, 2007

**By EDDIE CURRAN**
**Staff Reporter**

Alabama stands to lose about $2.8 million from the collapse of Price Oil Co., a Montgomery-based "jobber" and owner of convenience stores throughout the state, according to interviews and Bankruptcy Court records. The state, though, is hardly the lone loser in the recently concluded bankruptcy that names dozens of creditors with total claims of more than $59 million.

Other court records reveal that the company's owners, Myers and Freida Armstrong, sold their home in Montgomery and vanished, with even their own lawyer unable to locate them.

Price Oil was founded in the 1960s and, for most of its existence, served primarily as a jobber -- the term for companies that buy fuel from major companies, such as ExxonMobil and Citgo, then distribute it to gas stations and convenience stores.

The company sold fuel to about 100 convenience stores in Alabama and the Florida Panhandle. In 2004, it had net sales of more than $130 million and had about 85 employees, according to bankruptcy records.

The bulk of the state's losses involve fuel taxes collected at the pump, but not forwarded to the Alabama Department of Revenue by Price Oil and several associated companies, with a lesser amount due to the Alabama Department of Agriculture and Industries, which collects similar taxes.

Claimants in the case filed in U.S. Bankruptcy Court in Montgomery included mom and pop service stations, some in Mobile and Baldwin counties; major oil and gas producers such as ExxonMobil; and a host of banks, including Colonial Bank, the company's primary lender.

By far the largest local claim, for $715,662, was filed by the Mobile-based arm of Dairy Fresh Corp.

In the 1980s, Price Oil started the Lions Pride convenience store chain, and in 2005, decided to ramp up that portion of its business. The company borrowed substantial sums of money and bought a number of additional convenience stores.

Soon after, fuel costs rose. That slashed the profits in Price Oil's fuel distribution business and left the company unable to maintain payments on its new debt, according to descriptions of its downfall in the court filings.

The company filed bankruptcy in December 2005, shortly after the state filed the first of its liens, totaling more than $1.2 million. The company's filing reflected that some $25.5 million of its $59.3 million in debts were unsecured, meaning those creditors -- including the state of Alabama -- were last in line to collect money from the sale of the company's assets.

By far the largest creditor was Colonial, with total claims of about $20.6 million. Of that, some $7 million was unsecured, according to the filings.

Court records show the case was closed in December, primarily to curtail the immense fees for lawyers and other professionals that can drain bankruptcy estates. Parties continue to file motions, however, and the court still entertains them.

There was no trustee appointed to oversee the bankruptcy estate, and no final accounting of the distribution of the proceeds raised from the sale of the company's assets.

Colonial spokeswoman Lisa Free cited bank policy in not discussing the outcome for the bank from the Price Oil bankruptcy. Free did say, however, that Colonial's losses in no way approached $20.6 million.

Colonial, as a secured creditor with mortgages on many of Price Oil's convenience stores, was the primary beneficiary of the sale of those stores, court records indicate.

The Revenue Department filed liens against Price Oil totaling $3.15 million for unpaid gasoline and motor fuel (diesel) taxes from 2002 to 2005, with most of it in the final year. That included interest and penalties on top of $2.67 million in actual losses, according to department figures.

The company had a bond to insure some creditors against losses, including $216,000 set aside for the Revenue Department. Assuming the bonding company pays that money to the state, it would whittle actual losses to about $2.5 million.

Agriculture Commissioner Ron Sparks said that of the $293,071 claim his agency filed, about $60,000 of that was for interest and penalties.

Those funds include highway use taxes and inspection fees and, like the gasoline taxes collected by the Revenue Department, are included in the price of the product sold to consumers.

A lawsuit brought against the Armstrongs in federal court in Montgomery led to a response from Myers and Freida Armstrong's longtime attorney, if not the Armstrongs themselves.

Montgomery lawyer Dean Mooty wrote that the couple had retired about eight years before and were not involved in the business' day-to-day operations. In the fall of 2005, with Price Oil in free fall, the Armstrongs returned to try to save the business but were unable to do so, according to the lawyer.

The pair are in their early 60s, Myers Armstrong is in bad health and the couple "lost everything, including their home," as a result of Price Oil's collapse, Mooty wrote.

He added that he does not know the couple's whereabouts. Plaintiffs in other cases, including one that hired a private investigator, have also reported an inability to locate the Armstrongs.

© 2007 Press-Register

© 2007 al.com All Rights Reserved.